

United States District Court
Southern District of Texas

**UNITED STATES DISTRICT COURT**    **SOUTHERN DISTRICT OF TEXAS**ENTERED

July 07, 2020

David J. Bradley, Clerk

| | |
|---|---|
| Garland Bernell Harper, | § |
| § | |
| Petitioner, | § |
| § | Civil Action H-16-762 |
| *versus* | § |
| § | |
| Lorie Davis, | § |
| § | |
| § | |
| Respondent. | § |

# Opinion on Summary Judgment

### 1.    Introduction.

Garland Bernell Harper brutally killed his girlfriend and her two daughters, aged seven and sixteen, after suspecting that she was having an affair.   A jury convicted Harper of capital murder in 2010.   In a separate punishment phase, the prosecution presented evidence of Harper's extensive lawlessness which included a previous murder.    He was sentenced to death.    After unsuccessfully seeking state appellate and habeas remedies, Harper now sues for federal habeas corpus relief.

Harper's federal habeas petition raises thirty-one claims.   The state courts competently rejected most of Harper's federal claims.   Harper has not shown that the remainder of his claims are properly raised or substantively meritorious.   The court will deny him relief.

### 2.    Habeas Corpus Review.

The writ of habeas corpus is an exceptional writ.   Since the Magna Carta, the writ has protected individuals from wrongful punishment.   The writ

allows individuals to challenge their custody on the grounds that their conviction and sentence violate federal law sufficient to be a gross miscarriage of justice.

Federal courts and Congress "adjust the scope of the writ in accordance with equitable and prudential considerations."[1]  Principles of comity, finality, and federalism demand that federal courts defer to state court judgments within reason.  Congress enacted the Anti-Terrorism and Effective Death Penalty Act of 1996 to support the State's interest in the integrity of criminal judgments. AEDPA limits what a federal court may consider and how it reviews a state court decision.

AEDPA gives state courts the first opportunity to correct constitutional violations and prevents federal courts from granting the writ based on claims, arguments, and evidence presented for the first time in a federal petition.  Federal courts focus on "what a state court knew and did[.]"[2]

AEDPA requires significant federal deference when the state courts decide the merits of an inmate's constitutional arguments. An inmate may only secure relief after showing that the state court's rejection of his claim was either "*contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States."[3]  A decision is contrary to Supreme Court law when "it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [that] Court but reaches a different result."[4]

---

[1]      *Danforth v. Minnesota*, 552 U.S. 264, 279 (2008).

[2]      *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

[3]      28 U.S.C. § 2254(d)(1)(emphasis added).

[4]      *Brown v. Payton*, 544 U.S. 133, 141 (2005).

An unreasonable application of Supreme Court precedent is different from an incorrect one. AEDPA does not permit federal habeas relief for an erroneous decision, but only one that is objectively unreasonable. "[F]ocus[ing] on what a state court knew and did,"[5] an inmate must show that the state ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[6] This deference confines habeas relief to "extreme malfunctions in the state criminal justice systems."[7] "If this standard is difficult to meet, that is because it was meant to be."[8]

Harper has not met the AEDPA standard for granting the writ.

3.    *Analysis of Exhausted Claims.*

Harper litigated most of his federal claims in state court. Harper must show that the state court's rejection of those issues was contrary to Supreme Court law or unreasonable.

A.    Juror Basey Higgs (claim 1).

During post-conviction review, Harper employed an investigator to interview the jurors who served at trial. One juror, Carolyn Basey Higgs, swore an affidavit saying that she decided to vote for a death sentence after finding Harper guilty. She said nothing would have changed her mind. Harper argues that her failure to consider mitigating evidence violated his constitutional rights.

---

5    *Pinholster*, 563 U.S. at 182.

6    *White v. Woodall*, 572 U.S. 415, 420 (2014) (quotation omitted); *see also Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

7    *Greene v. Fisher,* 565 U.S. 34, 38 (2011).

8    *Richter*, 562 U.S. at 102.

The state court denied this claim because: (1) Basey Higgs' affidavit was inadmissible; (2) her affidavit did not say she did not deliberate or consider mitigating evidence; (3) she never said she would automatically impose a death sentence; (4) she said in voir dire that she could follow the law; and (5) she was not challengeable for cause because of her views on the death penalty.

The state court's rejection of this claim was reasonable.  Courts only consider affidavits about a jury's deliberations when there has been an outside influence.  Other than Basey Higg's inadmissible affidavit, nothing in the record suggests that she was a biased juror or did not follow the law in deliberations.  This claim has no merit.

### B.    Trial Counsel Ably Represented Harper

Harper says his attorneys gave him ineffective assistance.[9]  Under *Strickland v. Washington*,[10] Harper must show that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  Surmounting *Strickland*'s high bar is not easy. The reviewing court under *Strickland* must grant deference to the decisions of the defense attorneys.  Review under § 2254(d) is all the more difficult because a court must grant deference to both the decisions of counsel and of the state court.

Harper says that his attorneys were ineffective because his trial attorneys did not

- challenge the State's manipulation of witness testimony about an extraneous murder;
- properly prepare an expert to testify;

---

[9]    Claims 2, 4, 5, 6, 8, 9, 10, 11, 14, 15, 16, 17, and 18.

[10]    466 U.S. 668, 687 (1984).

- call lay witnesses to testify that he has mental illness;
- call witnesses to show he would not be a future danger;
- present testimony through a social historian;
- present available mitigating evidence;
- tell jurors how to consider mitigating evidence;
- remove prospective jurors who would automatically vote for death;
- preserve error;
- effectively bargain with the prosecution;
- present evidence of mental illness to show that his confession was involuntary.

The state habeas court extensively discussed each of these arguments. The state court found no error in trial counsel's handling of the trial of Harper's guilt.   For instance, Harper says that trial counsel did not adequately question prospective jurors to remove those who would automatically vote for death.  After reviewing the record, however, the state habeas court found that counsel's questioning was adequate. Also, Harper faults trial counsel for not making a timely objection to victim-impact testimony.  The state habeas court, however, found that counsel did object. Even then, the state court found that any failure to object would not have harmed the defense.

Most of Harper's *Strickland* claims involve trial counsel's performance in the penalty phase of trial.   Harper complains that defense counsel mishandled evidence about an extraneous murder.  The State argued that Harper raped and killed Teasa Jackson in 1989.  The State argued that Jackson's son (Louis Jackson) identified Harper as the man last seen with his mother, Harper's fingerprint was found by Jackson's body, Harper's DNA was found in Jackson's nude corpse, and Harper lied about having a sexual

relationship with Jackson. Harper argues that, decades after the crime, the State manipulated Louis Jackson's recollection of the offense and influenced him into identifying Harper as the man last seen with the victim. Also, Harper says that trial counsel should have objected when the State argued that he had raped Teasa Jackson.

As the Court will discuss at greater length below, Harper has not shown that his counsel was deficient in dealing with that evidence because Harper has not shown that the State manipulated the evidence or testimony. Still, the state habeas court found that trial counsel objected to the introduction of the extraneous crime and extensively cross-examined Louis Jackson. Trial counsel effectively challenged the DNA evidence relating to the murder. Also, Harper cannot show prejudice. Even if trial counsel had been able to prove that the State manipulated testimony, Harper's fingerprints and DNA still implicated him in Teasa Jackson's murder. The state habeas court reasonably found no deficient performance or prejudice regarding the extraneous murder.

Harper's claims extensively challenge how trial counsel put mitigating evidence before the jury. Harper claims that trial counsel did not prepare his expert or substantiate the expert's testimony through lay witnesses. Additionally, Harper says that counsel should have called other lay and expert witnesses. Harper presented all these arguments to the state courts, which extensively discussed them before finding each meritless.

Harper's arguments failed to acknowledge the case his trial attorneys put before jurors. As a common thread among all Harper's post-conviction arguments, the state habeas court found that Harper's new arguments would not have materially changed the case before the jury. Through extensive discussion, Harper argues that the defense should have packaged the mitigating case differently, or added factual nuances, but at its core, the

post-conviction was the same as that counsel presented.  The state habeas court found that trial counsel presented fundamentally the case information on which Harper based his habeas application.  To the extent that Harper made new allegations, rules of evidence and procedure would have prevented their introduction at trial.

Harper likewise faults counsel for various legal errors, such as failing to define mitigating evidence, tell jurors how to give effect to his mitigating evidence, and argue appropriately in closing.  The state habeas court, however, concluded that trial counsel had, in effect, done each of those things.  Harper's arguments fail to acknowledge trial counsel's efforts to assist jurors in assessing mitigating evidence.

Despite Harper's wide-ranging and long-winded complaints about trial counsel's efforts, he has not shown that the state court was unreasonable in finding no deficient performance or much less resultant prejudice.  The court will deny Harper's ineffective-assistance claims.

### C.    Appellate Attorney (Claim 19).

Harper says that his appellate attorney was defective because he waived oral argument and did not file a reply brief.  No federal law requires an attorney to file a reply brief or request argument.  Harper has not shown that submission of his case on briefs harmed his appeal.  The state court was reasonable to deny this claim.

### D.    Manipulation of Testimony (Claim 3).

Harper says that the State manipulated the testimony of Louis Jackson.  The State argued that, years before trial, Harper had raped Teasa Jackson.  Louis Jackson testified that he remembered seeing Harper with his mother immediately before her murder in 1989.  On state habeas review,

Harper presented an affidavit in which Jackson said the prosecutors fed him information about the crime by reading parts of the police report, telling him that they recovered Harper's DNA at the crime scene, and saying that Harper had killed his mother.

A prosecutor may not obtain false testimony. An inmate must show that (1) the testimony was false, (2) prosecutors knew it was false, and (3) the testimony affected the jury's verdict.[11]

The trial prosecutors submitted affidavits on state habeas review. The prosecutors said that, at the time of trial, Jackson was in prison. The prosecutors met with Jackson and asked if he remembered the circumstances of his mother's murder. Jackson said that he did. He also said he remembered what the man who was with his mother looked like. Jackson immediately identified Harper when shown a photo array. The prosecutors said that they did not tell Jackson that his DNA matched that from the rape kit, did not tell him that Harper killed his mother, and did not read to him from the offense report.

Based on the prosecutors' affidavits, the state habeas court found Jackson's post-conviction affidavit not credible. The state habeas court found that the State did not manipulate Jackson's testimony or present false testimony through him. AEDPA requires federal deference to the state court's findings. Harper has not shown that the state court's credibility determinations were not correct.

Further, trial counsel effectively challenged Jackson's ability to identify Harper after so many years. The jury knew of discrepancies between his statements to police in 1989 and his recollection years later.

---

[11]     *Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269-71 (1959).

Also, Jackson only saw Harper soon before his mother's murder. He never witnessed the killing. Even without Jackson's testimony, the State presented evidence connecting Harper to the murder. The State presented evidence that Harper's fingerprint was found in the bathroom where her body was found. Harper's DNA was found in her corpse. Harper lied about having had sex with her.

Moreover, the murder was only one feature in Harper's long history of violence, including the triple murder for which he was convicted. Without evidence of the extraneous murder, there is still no reasonable probability of a different outcome.[12] This claim will be denied.

E.    Racial Discrimination in Jury Selection (claims 12, 13, 28).

Harper alleges that the State struck prospective juror Donna Banks for cause because of her race. Under *Batson v. Kentucky*,[13] courts engage in a three-step burden-shifting framework to decide if the prosecution engaged in racial discrimination during jury selection. First, the defendant must make a *prima facie* showing that the State used peremptory strikes based on race. Second, the State must give race-neutral explanations for the strikes. Finally, the trial court must decide if the defendant has carried the burden of showing purposeful discrimination.

When the State exercised its peremptory strike against Banks, the defense noted that she was African-American and asked for a race-neutral explanation. The State provided several reasons for striking her: she did not answer questions directly, she said she would get rid of the death penalty in favor of life without parole, she believed that everyone is capable of

---

[12]    *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (defining materiality in terms of a "reasonable probability" of a different outcome).

[13]    476 U.S. 79 (1986).

rehabilitation, she believed that life in prison was more effective than the death penalty, and she believed strongly in forgiveness.

The defense responded that, of the eight peremptory strikes used by the State, four were against African-Americans.  The defense argued that the jurors that the State struck answered the jury questionnaire similar to those it did not strike.  The trial court found that the State's reasons for striking Banks were race-neutral.

When Harper raised this claim on appellate review the Court of Criminal Appeals found that the record supported the State's reasons for striking Banks.[14]  The Court of Criminal Appeals refused to accept Harper's invitation to compare Bank's questioning to other jurors because he had not provided jury questionnaires, provided information about the jury's racial composition, or explained why the State struck the other jurors.[15]

Harper renewed his claim on state habeas review. This time, however, the court had additional information.  The prosecutor provided an affidavit giving more detail on why the State struck Banks.  The state habeas court had information about the other jurors, but found that they did not exhibit the same or similar characteristics as those that caused the State to dismiss Banks.

Harper raises three related claims: (1) the State exercised peremptory strikes in a discriminatory manner (claim 12), (2) appellate counsel should have raised, and supported, a comparative juror analysis (claim 13), and (3) the State's discrimination extended to all African-American jurors (claim 28).

The Court easily rejects Harper's second and third arguments.  Harper's state habeas attorney raised a comparative juror analysis.  The

---

[14]    2012 WL 4833834 at *3.

[15]    2012 WL 4833834 at *3.

state habeas court found it meritless.  Harper has not shown that the Court of Criminal Appeals would have adjudicated the claim any differently on direct appeal.  And the Supreme Court has not held that a comparative juror analysis is necessary in the *Batson* framework.

Harper also summarily argues that the State used other strikes in a discriminatory manner but does not even provide enough detail to decide if he made a prima facie case for discrimination.

Harper has also not shown that the state courts were unreasonable in rejecting his *Batson* claim.  The prosecutor provided several reasons for dismissing Banks, all unrelated to her race.  The record supports the State's explanation, particularly because Banks gave long-winded answers and strongly favored rehabilitation.  The state courts were not unreasonable because Banks' questioning could reasonably give prosecutors the impression that she would not be a good juror.  As Harper has not met his burden of showing that the state court was unreasonable in finding that he did not demonstrate purposeful discrimination, the Court will deny these claims.

F.    Mental Illness (claim 23).

Harper claims that a diagnosis of schizoaffective disorder should exempt him from the death penalty.  Harper wants to apply the Supreme Court's exemption of intellectual disability from execution in *Atkins v. Virginia*[16] to all mental illness.  No law extends the *Atkins* holding to prohibit the execution of an inmate with mental illness.  The Eighth Amendment does not bar the execution of a mentally ill but competent inmate.  This claim will be denied.

---

[16]    536 U.S. 304 (2002).

G.     Sufficiency of the Evidence (claim 27).

Harper claims that insufficient evidence supports the jury's decision that he would be a future societal danger. A court may grant an insufficient evidence claim only if, after viewing all the evidence "in the light most favorable to the prosecution," it determines that no rational trier of fact could have reached the same decision as the jury.[17]

On direct appeal, the Court of Criminal Appeals found that the circumstance of this crime alone were sufficient to show that Harper would be dangerous. Also, the jury knew of Harper's two-decade history of crime, including violence toward family members and strangers. Importantly, Harper had killed before.[18] Sufficient evidence supported the jury's verdict.

H.     Voluntariness of his Confession (claim 29).

While incarcerated in 1995, police officers interviewed Harper about the killing of Teasa Jackson. Harper says that his statement was coerced because he was in prison and feared disciplinary action if he did not talk. The trial court held a hearing to decide if Harper voluntarily confesed. The testimony did not show any coercive pressure in the interview. A prison guard escorted Harper to the interview room but did not enter it. Harper was not handcuffed during the interview. Police officers testified that they delivered the *Miranda* warnings. Harper understood those warnings. The officers wore plainclothes and were armed. The police explained that they did not use coercive tactics. They talked to Harper for only about two hours. They told him that he could leave at any time.

---

[17]     *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[18]     *Harper*, 2012 WL 4833834, at *3-4.

On direct appeal the Court of Criminal Appeals found that this claim was procedurally barred because trial counsel did not make a proper objection to the 1995 statement's admission.    That holding bars federal review.  Alternatively, the state habeas court found that the government did not overwhelm Harper's will.[19]  Harper has not shown that he was threatened with prison disciplinary infractions if he did not talk to officers.  Harper cites no federal case finding that Texas prison conditions rendered a confession, plea, or waiver involuntary.  The record does not suggest that the police officers violated Harper's rights by taking the 1995 statement.  If Harper had presented the claim in a procedurally proper manner, the Court would have denied relief.

I.      Expert Witness (claims 30 and 31).

Harper says that the State violated his constitutional rights by allowing its expert to remain in the courtroom after the rule of sequestration had been invoked.  The Court of Criminal Appeals found that Harper defaulted this claim because he did not object at trial.[20]  The state-imposed procedural ruling bars federal review.

The claim is also without merit.  The federal constitution did not create the rule of sequestration.  The rule is a matter of procedure.[21]  A violation of the rule of sequestration is not of federal constitutional magnitude.  Even if the expert's presence in the courtroom may have violated state law, that

---

[19]     FFCL, at p. 65 ¶ 65.

[20]     2012 WL 4833834, at *5.

[21]     Texas Rule of Evidence 614.

error did not make the proceeding fundamentally unfair.[22]   This claim is denied.

J.      Routinely Denied Claims (Claims 20, 21, 24, 25).

Some of Harper's claims relate to Texas's method of assessing a death sentence.   Other prisoners have repeatedly raised similar attacks to Texas's capital sentencing scheme.   Courts have consistently denied each of those claims.   As controlling authority has rejected his arguments, the state court's denial of those claims was not contrary to, or an unreasonable application of, federal law.

K.      Cessation of Medication (Claim 22).

Harper says that he "likely" experienced symptoms of withdrawal and mental illness when he abruptly stopped taking medication during trial.   This claim is speculative.   Harper does not show any evidence that he was denied medication.   An expert testified at trial that Harper was taking medication. Even if he was not medicated, Harper has not shown that made him incompetent.   The state court found that Harper did not complain at trial about mental or physical issues that would prevent him from consulting with counsel.   Harper also gave lucid answers when questioned on the record. This claim will be denied.

4.      *Unexhausted Claims.*

Harper raises two claims that he did not put before the state courts. Harper says that trial counsel should have (1) objected to an expert's testimony (claim 7) and (2) objected to the suppression of hearsay testimony

---

[22]      *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (finding that a court may grant habeas relief only when the errors of the state courts make the underlying proceeding fundamentally unfair).

(claim 26).   An inmate must exhaust all state remedies before federal habeas relief is available.[23]  Unexhausted claims are procedurally barred by Texas abuse-of-the-writ rules.

Harper says that trial counsel should have objected to the State expert's testimony about his future dangerousness under *Daubert*.[24] *Daubert*, however, does not apply to expert evidence in a capital sentencing proceeding.  Even without an objection, trial counsel engaged the expert in lengthy cross-examination that accentuated changes in his opinion.  Trial counsel did not perform deficiently, and no prejudice resulted.

Harper also says that trial counsel should have objected when the trial court did not allow the defense to present mitigating evidence that was hearsay.   Harper, however, does not show how the exclusion of that testimony harmed his defense.  The claim fails for not showing *Strickland* prejudice.

5.   *Argument and Hearing.*

Harper requests oral argument on his petition and wants the court to hold an evidentiary hearing.  The court can decide this case on the papers.

6.   *Certificate of Appealability.*

Although Harper has not yet requested a certificate of appealability for his claims, the issue of a certificate is likely to arise.  This court may deny a certificate of appealability on its own motion.  A certificate will issue only if the petitioner has made a "substantial showing of the denial of a

---

[23]     28 U.S..C. § 2254(b)(1).

[24]     *Daubert v. Merrell Dow Pharms.*, 509 U.S 579 (1993).

constitutional right."[25]  Precedent forecloses relief on all Harper's claims.  No certificate is necessary.

7.    *Conclusion.*

"Though the penalty is great and our responsibility heavy, our duty is clear."[26] The court grants respondent's motion for summary judgment and denies Harper's habeas petition.  The court will dismiss his petition.  The court will not certify any issue for review on appeal.


Signed on _____, 2020, at Houston, Texas.


_____
Lynn N. Hughes
United States District Judge

---

[25]     28 U.S.C. § 2253(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[26]     *Rosenberg v. United States*, 346 U.S. 273, 296 (1953) (Clark, J.).